**Peter McENTEGGART, Plaintiff, Appellant,**

**v.**

**John M. CATALDO et al., Defendants, Appellees.**

**No. 71–1254.**

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1971.

Decided Dec. 1, 1971.

---

Philip A. Mason, Boston, Mass., with whom Brown, Rudnick, Freed & Gesmer, Boston, Mass., was on brief, for appellant.

Morris M. Goldings, Boston, Mass., Sp. Counsel to Mass. Bd. of Trustees of State Colleges, with whom Robert H. Quinn, Atty. Gen., and Walter H. Mayo III, Asst. Atty. Gen., were on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Peter McEnteggart, a non-tenured Associate Professor of Mathematics at Bridgewater State College for the academic year 1970–71, brought this action under 42 U.S.C. § 1983 against the members of the Board of Trustees and against his superiors within the college to challenge the decision of the trustees not to renew his contract for the academic year 1971–72. He alleged that his Fourteenth Amendment right to procedural due process had been violated in that he had not been afforded a statement of reasons for non-renewal or access to his personnel file and that the non-renewal was arbitrary and capricious and thus in violation of his substantive rights under the Fourteenth Amendment. Relying on our opinion in Drown v. Portsmouth School District, 435 F.2d 1182 (1 Cir., 1970), cert. denied, 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971) [*Drown I*], the district court ordered the trustees to supply a statement of the reasons for non-renewal and, upon their producing the reasons, dismissed the action. McEnteggart appeals.

To comply with the order of the district court, defendants submitted an affidavit of defendant Rondileau, President of Bridgewater. The operative part of that affidavit was a letter dated February 23, 1971, from defendant Abramson, Chairman of the Mathematics Department, to defendant Harrington, Academic Dean of Bridgewater. The reasons detailed in that letter are in essence that McEnteggart has irritated Abramson, the members of the department, and various deans by his overly

aggressive attitude towards tenure; that he "has shown himself to be difficult to get along with in matters other than this long tenure situation" (with examples); that "several students have told me that he seems aloof and unconcerned [with examples], although others think that he is an effective teacher"; that at the last minute he withdrew from an evening course which he had volunteered to teach; and that "he is a threat to the harmony of our department".

■ In our opinion in the second round of Drown v. Portsmouth School District, 451 F.2d 1106 (1st Cir., filed this date) [*Drown II*], we laid down the standard for measuring a non-tenured teacher's challenge to a statement of reasons on the ground that they are arbitrary and capricious. There we held that to state a claim, a high school teacher must allege, and to prevail, he must prove, that each of the stated reasons is trivial, or is unrelated to the educational process or to working relationships within the educational institution, or is wholly unsupported by a basis in fact. The same standard, we conclude, may properly be applied to the claims of a college teacher, although with due recognition that a college presents a different context and has a different educational mission.

■ McEnteggart's claim is fundamentally not responsive to this standard. He argues that "School authorities should not be free to act irrationally or arbitrarily by refusing to retain a teacher merely¯ because he has red hair or green eyes, or * * * merely because, as here, such reemployment would result in the Plaintiff-Appellant's outranking his present immediate superior." In granting defendants' motion to dismiss, the district court presumably recognized that this assertion did not call into question the accuracy of all of the stated reasons for non-renewal. That a renewal may not be denied *merely* because a teacher has red hair does not mean that a red-haired teacher may not be released for other reasons.

We need not look beyond what was evidently the dispositive reason, that McEnteggart was "difficult to get along with" and a "threat to the harmony" of the department. The reason finds support in the record. Defendant Abramson indicated in his letter to Dean Harrington that, for example, "Professor McEnteggart made contemptuous remarks about some of his fellow department members, once saying that 'there are at least a few good mathematicians around here'." That this incident and the numerous others mentioned in the letter upset the department is reflected in the 5–0 vote of its tenured members recommending that McEnteggart's contract not be renewed.

The department may well, as McEnteggart asserts, be purchasing harmony at the expense of scholarly potential. Even so, the college can surely prefer harmony in deciding which of its non-tenured faculty members will be granted new contracts. The reason is not trivial or unrelated to working relationships within the college. Since McEnteggart does not, as he probably could not, challenge the conclusion that he is a threat to the harmony of the department or contest the superior's account of the incidents upon which the conclusion is based, he fails to claim under the third branch of the arbitrariness test that the reason is wholly unsupported by a basis in fact. In sum, his arbitrariness challenge misses its mark.

■■ McEnteggart raises a further issue of procedural due process. *Drown I* was decided on December 18, 1970, and expressly applies to ·decisions not to renew made subsequent to that date. 435 F.2d at 1188. McEnteggart was informed on February 25, 1971, that his contract would not be renewed, but it was not until June 8, 1971, that he was afforded a statement of reasons,· and then only under order of the district court. By letters of March 12, and March 25, his counsel requested such ·a statement. Defendant Rondileau responded on March 29 that "it is the policy of the Board of Trustees not to pro-

vide explanations for non-renewal of contracts for non-tenured faculty members."

As we noted in *Drown I*, a statement of reasons may assist the teacher in obtaining future employment, in flushing out unconstitutional reasons, and perhaps in correcting misunderstandings with the teacher's present employer. Because the last purpose is better served if reasons are afforded before the decision not to renew is case-hardened, we emphasize that they should be provided when the decision is made. In the present case, we realize that the decision was made soon after *Drown I* and that procedures may have been in transition. Nevertheless, McEnteggart did make two subsequent requests for reasons, which were refused. Accordingly, we assess attorney's fees in this appeal against the defendants. While this may be unusual in that defendants have prevailed on appeal, we think that it provides substantial justice since plaintiff was forced to go to court to obtain the statement of reasons to which he was constitutionally entitled.

Affirmed.