**TENANTS AND OWNERS IN OPPOSITION TO REDEVELOPMENT ("TOOR"), etc., et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ("HUD") et al., Defendants.**

**No. C–69 324 SAW.**

United States District Court,
N. D. California.

Jan. 30, 1974.

See also, D.C., 406 F.Supp. 960.

Sidney M. Wolinsky, J. Anthony Kline, Public Advocates, San Francisco, Cal., and Amanda Hawes (formerly with San Francisco Neighborhood Legal Assistance Foundation and now with:) Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs.

Henry F. Davis, Michael A. DiSanto, San Francisco Redevelopment Agency, and Frederick P. Furth, San Francisco, Cal., James L. Browning, Jr., U. S. Atty., Northern District of California, San Francisco, Cal., Richard F. Locke, Asst. U. S. Atty., for defendants.

## MEMORANDUM AND ORDER RE COUNSEL FEES

WEIGEL, District Judge.

Early in 1970, plaintiffs, low income residents of a run-down area in San Francisco, were faced with imminent displacement from their homes for construction of a multi-million dollar hotel and convention complex known as the Yerba Buena Center Redevelopment Project. Relying upon applicable federal statutes, plaintiffs filed suit here to enjoin defendant San Francisco Redevelopment Agency from relocating residents of the area and to enjoin defendant Department of Housing and Urban Development from allocating additional federal funds to the project.

On April 29, 1970, an injunction was granted by this Court on the grounds

that the relocation plan approved by the Department of Housing and Urban Development failed to meet the requirements of the National Housing Act of 1949 as amended 42 U.S.C. § 1441 et seq. Specifically, the Court determined that there was no evidence to show that the relocation dwellings would meet the legal requirements that they be "decent, safe and sanitary" and "within the financial means" of those displaced. In October, 1970, the relevant parties agreed in writing that no person would be displaced unless and until the relocation housing fully met the requirements of the National Housing Act of 1949 and that, within three years, a substantial number of new or rehabilitated low cost housing units would be completed in San Francisco. Based upon that agreement, the Court dissolved the injunction, retaining jurisdiction to insure compliance with the law. Ultimately all issues in the litigation were resolved in a settlement agreement and the suit was dismissed on July 19, 1973, 406 F.Supp. 1024.

 Plaintiffs now move for an order granting them reasonable attorneys' fees against defendants San Francisco Redevelopment Agency and Robert L. Rumsey, Exectuve Director of the Agency, in his individual and representative capacities.[1]

 The National Housing Act of 1949 is silent as to the allowance of attorneys' fees. In the absence of statutory authorization, such fees are generally not awarded. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). However, in the exercise of their equity jurisdiction, federal courts have created a limited number of exceptions to this rule. *Fleischmann, supra.* It is claimed by plaintiffs that two such

exceptions are applicable here—the so-called common fund and the private attorney general exceptions.

 When litigation creates or preserves a fund of money, in which persons in addition to the actual plaintiff will share, courts may award a portion of the fund to reimburse plaintiff for counsel fees. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). The Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed.2d 493 (1970), states the rationale:

> To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

Plaintiffs urge that the common fund doctrine may be applied here. The argument runs: Direct products of this litigation are low cost housing and rent subsidies with a projected value of at least $150,000,000.00; this "fund" will benefit large numbers of present and future low income residents of San Francisco; since the fund is not liquid, and since the potential beneficiaries of it are financially unable to contribute toward counsel fees, defendants should be assessed.

 The difficulty with this approach is that it does not convincingly meet a basic purpose of the common fund doctrine, *viz.,* to insure that those who financially benefit from the litigation share in its costs. It can hardly be said that *defendants* in this case benefit financially from the "fund". Nor can it be said that overriding considerations of fairness require *defendants* to pay counsel fees merely because plaintiffs have created a common fund benefiting plaintiffs and third parties.[2]

---

1. The Department of Housing and Urban Development is not included because attorneys' fees cannot be awarded against an agency of the United States. 28 U.S.C. § 2412.

2. A "quasi application" of the common fund doctrine, similar to that proposed by plain-

tiffs, was adopted in Brewer v. School Board of City of Norfolk, Virginia, 456 F.2d 943 (4th Cir.), cert. denied, 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149 (1972). There the school district was ordered to provide free transportation to students under a plan of desegregation. The Court assigned a

■ However, a variation of the common fund doctrine warrants consideration. It is better described as a "common benefit" doctrine. When litigation benefits a class of persons, even though not financially, fees will be assessed against defendants to spread counsel costs throughout the class benefited. Mills v. Electric Auto-Lite, *supra*; Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L. Ed.2d 702 (1973).[3] For reasons now to be stated, the common benefit doctrine justifies an award of counsel fees in this case.

■ Plaintiffs brought suit to vindicate vitally important Congressional policy. That policy is succinctly stated and emphasized in the legislative history of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970:

> When [traditional concepts of valuation and eminent domain are] applied to densely populated urban areas, with already limited housing, the result can be catastrophic for those whose homes or businesses must give way to public needs.
>
> . . . . . .
>
> [This bill] provides a humanitarian program of relocation payments, advisory assistance, assurance that comparable decent, safe, and sanitary replacement housing will be available for displaced persons prior to displacement . . . .

monetary value to this transportation, which became the common fund. But since imposing a charge against the students for their proportionate share of the litigation costs would defeat the purpose of the litigation, the defendant school district was ordered to pay the fees. This "quasi application" seems far removed from the purposes of the common fund doctrine discussed above. The award in *Brewer* could, however, be justified under the common benefit doctrine, discussed *infra*.

3. In *Mills*, plaintiff shareholders brought a derivative suit against the corporation for alleged proxy violations and prevailed. The Court held that attorneys' fees should be awarded, whether a monetary recovery or only equitable relief is ultimately obtained. Since all shareholders benefit from "a fair

1970 U.S.Code Cong. and Admin.News, pp. 5850, 5851–5852.

That plaintiffs successfully vindicated this strong Congressional policy is beyond question. As originally formulated, the Yerba Buena Project would have destroyed low rent housing for over 3000 persons while providing less than 300 new low rent units. (See Findings and Conclusions on Motion for Preliminary Injunction, April 30, 1970, p. 3). And there was no indication that the relocation housing to be provided would have met the applicable statutory standards for decency, safety and comparability. As a result of this litigation, wholesale destruction of housing units was prevented and provision was made for not less than 1800 units of new or rehabilitated low cost housing—housing which would meet the legal requirements of the National Housing Act. The value of these units plus rent subsidies also provided for as a result of the litigation is estimated to be in excess of $150,000,000.00. Thus, not only were the residents of the Yerba Buena Area assured the relocation housing required by law, but the entire San Francisco community benefited (and will benefit) from an assured easing of a chronic shortage of low cost housing. By assessing an award of counsel fees against the relevant public entity—the San Francisco Redevelopment Agency—the costs of the litigation are spread over all

and informed corporate suffrage" and from a vindication of a corporate cause of action, all should share in the expenses of counsel. The Court's device for spreading the cost among all shareholders was simply to assess the corporation.

In *Hall*, plaintiff union member was expelled following his resolution condemning the union management for undemocratic actions. He successfully brought suit for reinstatement and was awarded attorneys' fees. In affirming the award, the Court found that by vindicating his own right of free speech, he had rendered a substantial benefit to the union and all its members. Assessing defendant labor union for counsel fees served to reimburse plaintiff and spread the cost among the recipients of this "common benefit". 412 U.S. 1, 6, n. 7, 93 S.Ct. 1943.

the beneficiaries. The public will bear the cost just as it does when its elected or appointed representatives act to enforce the law.

■ Plaintiffs rely upon the private attorney general doctrine as an independent ground for the award of attorneys' fees. The reliance is well placed. Designed to encourage individuals to litigate issues of public concern, this doctrine provides for awarding counsel fees when private parties give effect to important Congressional policies and in so doing, benefit a significant number of persons other than the named plaintiffs. *See, e. g.,* Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972). *See generally,* Nussbaum, Attorney's Fees in Public Interest Litigation, 48 N.Y.U.L.Rev. 301 (1973). This doctrine thus promotes a value different from that of the common benefit doctrine, which is designed primarily to spread costs. However, when applied in a case like the present one, in which private litigation vindicates important public policies, the two doctrines tend to merge. Both are appropriately applied for the same reasons. Both encourage private citizens to litigate in the public interest. Both spread the expense of the litigation over all citizens. *See* Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 484 F.2d 1331 (1st Cir. 1973).

Defendants argue that the settlement agreement precludes an award of fees because neither party "prevailed" in the litigation. This argument completely misconstrues the private attorney general and common benefit doctrines. Under these doctrines, fees are awarded not because plaintiffs prevail in a technical sense. They are awarded because plaintiffs successfully enforce rights important to those benefited. By their suit in this case, plaintiffs halted violation of the National Housing Act and insured proper relocation housing for Yerba Buena area residents. The settlement producing these results was the direct consequence of their persistent and effective prosecution of the litigation.[4] Theirs was a landmark achievement in requiring compliance with federal legislation aimed at making the poor beneficiaries, not victims, of federally financed urban renewal projects.

For the foregoing reasons and other good cause,

It is hereby adjudged and ordered that plaintiffs are entitled to recover reasonable attorneys' fees from defendant San Francisco Redevelopment Agency and from Robert Rumsey in his representative capacity as Director of the Agency.

It is further ordered that if counsel for plaintiffs and said defendants are unable to agree upon the amount of such fees within forty-five (45) days from the date of this order, such amount may thereafter be fixed by the Court upon motion of any party.

---

4. Fees have been awarded even when defendants prevailed on the merits. In McEnteggart v. Cataldo, 451 F.2d 1109 (1st Cir. 1971), the contract of a non-tenured college professor was not renewed. No statement of reasons was submitted for this action, in violation of the Due Process Clause of the Fourteenth Amendment. The trial court ordered the statement to be given and then dismissed plaintiff's claim that the nonrenewal was arbitrary. Affirming the decision, the Court of Appeals awarded attorneys' fees against defendants, stating:
 While this may be unusual in that defendants have prevailed on appeal, we think that it provides substantial justice since plaintiff was forced to go to court to obtain the statement of reasons to which he was constitutionally entitled. 451 F.2d at 1112.
 *See also,* Parham v. Southwestern Bell Tele. Co., 433 F.2d 421 (8th Cir. 1970).
 In the case at bar, the parties agreed, in connection with the final settlement and dismissal, that the Court retained jurisdiction solely to decide the question as to whether or not plaintiffs were entitled to recover counsel fees.