Anny NEWMAN, Plaintiff, Appellee,

v.

COMMONWEALTH OF MASSACHU-SETTS, et al., Defendants, Appellees,

Appeal of Diana BURGIN, et al., Defendants, Appellants.

No. 88–1923.

United States Court of Appeals, First Circuit.

Heard Feb. 6, 1989.

Decided Aug. 28, 1989.

---

See also 115 F.R.D. 341.

Lawrence T. Bench, First Associate Counsel, University of Massachusetts, for defendants, appellants.

Daniel F. Featherston, Jr., with whom Susan S. Riedel was on brief, for plaintiff, appellee.

Before SELYA, Circuit Judge,
ALDRICH and COFFIN, Senior Circuit
Judges.

COFFIN, Senior Circuit Judge.

Plaintiff Anny Newman, a tenured professor at the University of Massachusetts, was accused of publishing a plagiarized article. She claims the university wrongly censured her, and she therefore brought this suit against four university employees alleging the violation of federal and state civil rights laws, and, as to one, state tort law. The district court denied the defendants' motions for summary judgment, which included a request that they be granted qualified immunity, and this interlocutory appeal followed. We find that the defendants are entitled to qualified immunity on plaintiff's due process claims, but that qualified immunity is premature at this time on her other claims. We do not reach any other issues in this limited appeal.

I.

We begin by describing only briefly the factual background of this case, providing more detail as necessary in other sections of the opinion.

Plaintiff Newman, an assistant professor in the Russian Department, filed a report for the 1982–83 academic year that listed an article she had published about a 17th-century Serbo–Croatian poem.[1] After reviewing the report, defendant Diana Burgin, chairperson of the Russian Department, informed members of the department's personnel committee that she believed there were resemblances between the article listed in the report and a book published in German in 1952 by Vsevolod Setschkareff.

The personnel committee notified plaintiff that questions had been raised about her article. A short time later, the committee communicated its concerns about the

piece to defendant Richard Freeland, dean of the College of Arts and Sciences. Plaintiff submitted a detailed "Refutation" to Freeland, explaining that the challenged article was a revision of her master's thesis submitted at Harvard University in 1962. She further explained that her thesis advisor had assigned two basic texts to be used as sources and models for the thesis, one of which was the Setschkareff book. In addition, plaintiff said she had worked with Professor Setschkareff, her Russian literature professor, in preparing the thesis.

Freeland solicited the advice of two outside experts on whether plagiarism, in the sense of similarities, had occurred and appointed a special committee to advise him on the question of plagiarism and what sanctions, if any, should be imposed on plaintiff. One of the outside experts concluded that plaintiff had plagiarized. The other expert described her method of documentation as substandard. He concluded that her work represented "able but less than meticulous scholarship," and that proving deliberate plagiarism would be difficult.[2] The committee's report concluded that plaintiff's article and thesis "is an objective instance of plagiarism" but because of mitigating circumstances recommended that plaintiff only be censured for "seriously negligent scholarship."

In a written proposal to the provost of the Boston campus, Freeland adopted the findings and recommendation of the committee and listed six actions for implementing the censure. These included a public reading of a letter of censure before the University's Faculty Council and College Senate, and a bar against plaintiff's serving as chair of her department or voting on degrees.

The provost and chancellor, both defendants in this case, concurred in Freeland's recommendation, and the chancellor directed that the sanctions be carried out. After the letter of censure was read to the Facul-

---

**1.** Each faculty member at the Boston campus of the University of Massachusetts must file an Annual Faculty Report that is reviewed by her department and the dean of the college.

**2.** Plaintiff independently solicited opinions from five scholars. In general, they felt that even if her work was in some instances underdocumented, it represented acceptable scholarship.

ty Council and College Senate, plaintiff read a statement in response before each faculty body.

Plaintiff filed this action in November 1986. She claims that the University officials violated her right to procedural due process in the manner in which they handled the plagiarism charge and to substantive due process by ultimately resolving the charge against her on the merits. These claims were brought under both state and federal civil rights laws. *See* 42 U.S.C. § 1983; Mass.Gen.Laws Ann. ch. 12, § 11I. She also brought three state common law claims against defendant Burgin alone, alleging intentional interference with an economic relationship, intentional infliction of emotional distress, and defamation.

Defendants filed a motion for summary judgment claiming that plaintiff suffered no constitutional injury and that defendant Burgin did not violate state tort law. They also claimed qualified immunity from damages on all claims. The district court denied the motion, stating that factual matters remained for the jury to determine. The court made no explicit reference to qualified immunity, but presumably intended its denial of summary judgment to cover the immunity claim.

## II.

■ We must establish at the outset of our discussion the proper scope of this appeal. The district court denied defendants' motion for summary judgment on all issues. Defendants have urged us to review at this time not only the district court's denial of qualified immunity but also its decision to deny summary judgment on the merits of the federal and state claims. We decline, however, to depart from our now

well-established practice of limiting our interlocutory review to the issue of qualified immunity. *See, e.g., Goyco de Maldonado v. Rivera,* 849 F.2d 683, 684 (1st Cir.1988); *Quintana v. Anselmi,* 817 F.2d 891, 892 n. 3 (1st Cir.1987); *Bonitz v. Fair,* 804 F.2d 164, 173–76 (1st Cir.1986), *overruled on other grounds, Unwin v. Campbell,* 863 F.2d 124, 132 (1st Cir.1988). We have adhered to this limitation even when the merits of a particular case are "inexorably intertwined" with the qualified immunity issue. *See Unwin v. Campbell,* 863 F.2d 124, 133 n. 9 (1st Cir.1988); *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 44 (1st Cir.1988). We therefore discuss only the immunity issue.

## III.

Plaintiff's civil rights claims allege violations of both her procedural and substantive due process rights.[3] She claims that the defendants violated her right to substantive due process because their investigation and decision-making on the plagiarism charge was arbitrary and capricious. Her allegation of a procedural due process violation is based on many of the same deficiences in process that underlie her substantive claim. Moreover, she claims that defendants' handling of the plagiarism charge was so inadequate that any reasonable person would have known that their conduct was a violation of her "clearly established" substantive and procedural due process rights, and that defendants therefore are not entitled to qualified immunity from damages. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–819, 102 S.Ct. 2727, 2738–2739, 73 L.Ed.2d 396 (1982); *Unwin v. Campbell,* 863 F.2d 124, 128 (1st Cir.1988); *Duarte v. Healy,* 405 Mass. 43, 47, 537 N.E.2d 1230, 1232 (1989).[4]

---

3. In all ways relevant to this appeal, plaintiff's complaint treated identically the federal and state civil rights claims. Defendants also take the position that these claims are correlative. Accordingly, we shall assume this to be the case, but without deciding the point.

4. The question of qualified immunity under the Massachusetts Civil Rights Act is properly before us on this interlocutory appeal because the Supreme Judicial Court has construed this immunity to protect a defendant from *suit* and not

just from *liability. See Duarte,* 405 Mass. at 44 n. 2, 537 N.E.2d at 1231 n. 2 (discussing immunity under Massachusetts Civil Rights Act) (citing *Breault v. Chairman of the Bd. of Fire Comm'rs of Springfield,* 401 Mass. 26, 30–31, 513 N.E.2d 1277, 1280–81 (1987)). In order to give full effect to this substantive protection from harassing litigation, it is necessary to provide for interlocutory review of a denial of immunity. As in the case of section 1983 immunity, a denial of a defendant's motion for immunity

We shall begin with a discussion of the procedural claim.

A. *Procedural Due Process.*

■ It is without question that plaintiff, a tenured professor who faced the possibility of dismissal as a result of the plagiarism charge, was entitled to the protections of procedural due process, and that this due process right was clearly established at the time defendants acted. *See Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Recognizing plaintiff's clearly established right does not end our inquiry, however. We must decide whether defendants reasonably should have understood that their specific actions violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Unwin,* 863 F.2d at 131.

We recently have observed that the concept of due process is equivalent to "fundamental fairness," and that "[n]otice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process." *Gorman v. University of Rhode Island,* 837 F.2d 7, 12 (1st Cir.1988). *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). We further elaborated in *Gorman:*

> The hearing, to be fair in the due process sense, implies that the person adversely affected was afforded the opportunity to respond, explain, and defend. Whether the hearing was fair depends upon the nature of the interest affected and all of the circumstances of the particular case.

837 F.2d at 13.

The undisputed facts in this case show that plaintiff was notified of the plagiarism

charge against her at the outset of the investigation and was given multiple opportunities "to respond, explain, and defend." Her detailed "Refutation," submitted to Dean Freeland, became a part of the record that was passed on to higher levels of the university hierarchy. She was given the opportunity to respond to the reports filed by the outside experts and the dean's committee. She was entitled to call and cross-examine witnesses at a hearing before the dean's committee, and was permitted to submit any other evidence in her behalf. She also drafted additional responses to the provost and chancellor before they made decisions about whether to adopt Dean Freeland's recommended course of action.

Thus, plaintiff had more than ample opportunity to explain and defend the similarities between her work and Professor Setschkareff's long before any action was taken against her. At every step along the way, defendants gave plaintiff notice of their intended procedure and sought her input. Plaintiff points to no case in which this much involvement in the decision-making process was found to be constitutionally inadequate. The cases she cites involve complete failures to consider the plaintiff's point of view. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (no hearing before security guard dismissal); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (no hearings concerning student suspensions); *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773 (9th Cir.1982) (no hearing before teacher dismissal); *Anapol v. University of Delaware,* 412 F.Supp. 675 (D.Del.1976) (no hearing before professor's dismissal); *Davis v. Alabama State University,* 613 F.Supp. 134 (M.D.Ala.1985) (denial of due process where plaintiff had no opportunity to respond to information in his personnel file).

---

under the Massachusetts Civil Rights Act meets the requirements of the "collateral order" doctrine and is therefore appealable as a final decision under 28 U.S.C. § 1291. *See Mitchell v. Forsyth,* 472 U.S. 511, 524–29, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985); *Cohen v.*

*Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). *See also Sorey v. Kellett,* 849 F.2d 960, 962–63 (5th Cir.1988); *Marrical v. Detroit News, Inc.,* 805 F.2d 169, 172–74 (6th Cir.1986).

*See also Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 ("in the light of pre-existing law the unlawfulness must be apparent"). We therefore conclude that defendants reasonably could have believed that the manner in which they conducted the plagiarism investigation satisfied the requirements of procedural due process.

■ The district court, however, held that the defendants' failure to send plaintiff's refutation to the outside experts could be viewed as a due process violation. It could be, the court stated, that this action denied her "the opportunity to present a meaningful defense at a critical stage of the proceedings." The question before us, however, is whether Dean Freeland *should have known* that failure to provide the refutation to the experts amounted to a constitutional violation.

Freeland's decision to withhold plaintiff's response was not so clearly inconsistent with her procedural rights that he could be charged with knowledge of a constitutional violation. The experts were asked to comment only upon whether plaintiff's work could be characterized as plagiarism based on the similarities with Setschkareff's work. These experts did not take part in the decision to sanction plaintiff. Everyone who participated in that decision *was* given a copy of plaintiff's response, and was able to weigh for himself the significance of the copying in light of its context. Thus, Freeland reasonably could have viewed the expert evaluations as a preliminary, rather than critical, stage of the proceedings, with the plaintiff being fully able to present her defense in a meaningful way through submission of the refutation to him and his superiors.

Nor do any of plaintiff's other alleged procedural deficiences alter our conclusion that defendants are entitled to qualified immunity. Plaintiff was not entitled to "perfect" process, and the fact that she can point to ways in which the procedure could have been fairer does not detract from our conclusion that the defendants should not reasonably have viewed their process to be insufficient. Indeed, on this record the adequacy of process would seem clear.

We hold, therefore, that defendants are entitled to qualified immunity on plaintiff's procedural due process claims under federal and state law.

**B.** *Substantive Due Process.*

Plaintiff contends that the defendants' actions amounted to a violation of her clearly established substantive due process right to be free from arbitrary and capricious decisions affecting her employment status. Plaintiff derives her substantive right largely from two First Circuit decisions explicitly holding that nonrenewal of teacher contracts would be found arbitrary and capricious in violation of the Fourteenth Amendment if the stated reason for the action was "trivial, or is unrelated to the educational process ... or is wholly unsupported by a basis in fact." *McEnteggart v. Cataldo,* 451 F.2d 1109, 1111 (1st Cir.1971); *Drown v. Portsmouth School Dist.,* 451 F.2d 1106, 1108 (1st Cir.1971).[5]

Plaintiff also relies more generally on other cases articulating the principle that substantive due process protects an individual against arbitrary action by the government. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889); *Bateson v. Geisse,* 857 F.2d 1300, 1303 (9th Cir.1988); *Brenna v. Southern Colorado State College,* 589 F.2d 475, 476–77 (10th Cir.1978); *Jeffries v. Turkey Run Consolidated School Dist.,*

**5.** Our discussion in this section assumes that it is plaintiff's *property* interest in her job that triggers her substantive due process rights. The decision to censure plaintiff may also have implicated a liberty interest because the charge of plagiarism likely would "seriously damage [her] standing and associations in [her] community." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). *See also Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Assuming, without deciding, that this liberty interest would be protected by a clearly established substantive due process right, we have been given no reason to treat the property and liberty interests differently in deciding whether defendants are entitled to qualified immunity.

492 F.2d 1, 3–4 (7th Cir.1974); *Black v. Sullivan*, 561 F.Supp. 1050, 1061 (D.Me. 1983); *Beatham v. Manson*, 369 F.Supp. 783, 789–92 (D.Conn.1973).

■ We are persuaded that at the time defendants acted it was clearly established in our circuit that school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation.[6] In reaching this conclusion, we recognize that the courts are not yet unanimous on whether this substantive right exists, *see infra*, and that the Supreme Court several times in the last decade has sidestepped the question of whether the Fourteenth Amendment provides substantive protection against arbitrary and capricious academic decision-making. *See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985) (student dismissal); *id.* at 228–30, 106 S.Ct. at 515–16 (concurring opinion of Powell, J.); *Harrah Independent School District v. Martin*, 440 U.S. 194, 197–98, 99 S.Ct. 1062, 1063–64, 59 L.Ed.2d 248 (1979) (per curiam) (teacher dismissal); *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 91–92, 98 S.Ct. 948, 955–56, 55 L.Ed.2d 124 (1978) (student dismissal).

Yet our holding in *Drown* and *McEnteggart* was unequivocal, and that conclusion was reaffirmed without question in subsequent cases. *See Willens v. University of Massachusetts*, 570 F.2d 403, 406 (1st Cir. 1978); *Wishart v. McDonald*, 500 F.2d 1110, 1113, 1115 (1st Cir.1974). *See also Perkins v. Board of Directors*, 686 F.2d 49, 50 n. 3 (1st Cir.1982) (noting that plaintiff failed to make a colorable showing of her allegation that the decision not to renew her contract was arbitrary and capricious).[7]

In addition, we note that at the time of plaintiff's censure, most circuits that had considered the issue either had held explicitly or had suggested that the Fourteenth Amendment protects public employees from arbitrary and capricious government action affecting their employment. *See, e.g., Gargiul v. Tompkins*, 704 F.2d 661, 668 (2d Cir.1983), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Barnett v. Housing Authority of Atlanta*, 707 F.2d 1571, 1577–78 (11th Cir.1983) (requiring improper motive in addition to arbitrary action); *Brenna*, 589 F.2d 475, 476–77 (10th Cir. 1978); *Parham v. Hardaway*, 555 F.2d 139, 142 (6th Cir.1977); *Miller v. Dean*, 552 F.2d 266, 268 (8th Cir.1977); *Kowtoniuk v. Quarles*, 528 F.2d 1161, 1165–66 (4th Cir. 1975). *But see Brown v. Brienen*, 722 F.2d 360 (7th Cir.1983) (no substantive due process protection for state-created property interest in employment). Thus, even if in the future this circuit or the Supreme Court rejects the view that a public employee has a substantive due process right in these circumstances, our recognition of that right was clear at the time defendants acted and it is still viable law today.[8]

---

**6.** Although *Drown* and *McEnteggart* specifically concerned the loss of jobs through nonrenewal of contracts, we believe the principle established in those cases clearly is applicable to other types of employment actions that substantially damage an employee's property interest in her job. In this case, plaintiff was barred from voting on degrees and from serving on important university committees or as chair of her department. A letter of censure for an act of "objective plagiarism" and "seriously negligent scholarship" was placed in her permanent file, an action that undoubtedly affects her ability to secure other employment in the future. We think it obvious that this severe sanction substantially damaged plaintiff's property interest in her position.

**7.** Although *Drown* and *McEnteggart* were overruled by the Supreme Court in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) to the extent that they gave *un*tenured teachers procedural due process protection, that decision does not affect their applicability in cases involving tenured teachers.

**8.** The Ninth Circuit recently concluded that in 1984 there was no clearly established constitutional right to substantive due process protection for continued public employment. *Lum v. Jensen*, 876 F.2d 1385 (9th Cir.1989). The court based its conclusion on the absence of binding precedent in its own circuit combined with the conflict among the circuits that had reached the issue. Our case clearly is distinguishable because *Drown* and *McEnteggart* are direct precedent.

■ Our conclusion that plaintiff's substantive due process right was clearly established means that, under *Drown* and *McEnteggart*, defendants should have known that they were violating the law if their decision to censure plaintiff was unrelated to educational concerns, taken for trivial reasons, or wholly unsupported by any basis in fact. 451 F.2d at 1108; *id.* at 1111. Knowledge that the law forbade a wholly unsupported decision is not, however, sufficient reason to deny defendants qualified immunity. Defendants are liable for damages only if they *should have known* that *what they did* violated the law. *See Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038 (qualified immunity protects government officials performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated").

Plaintiff contends that defendants should not be granted summary judgment based on qualified immunity because genuine issues of material fact remain concerning whether defendants had reason to censure her. She stresses that defendants censured her based largely on the views of one expert who concluded that plagiarism had occurred, despite the considerably less damning opinion of the other outside expert and the directly conflicting opinions of five scholars she contacted independently. Plaintiff's argument is that the differing opinions over whether her research methods represented adequate, if not perfect, scholarship demonstrate a factual dispute over whether the severe censure was unwarranted, and therefore arbitrary.[9]

The problem with plaintiff's argument is that the factual dispute she identifies concerns the *merits* of her claim rather than the immunity issue.[10] Even if it ultimately can be shown that the decision to censure her was arbitrary—if, for example, it turns out that the "expert" who found plagiarism lacked any knowledge of Serbo–Croatian literature—defendants are entitled to immunity from damages so long as they had no reason to know that the evidence on which they relied was faulty. So long as they had a good faith belief that the evidence was worthy of trust—even if it represented a minority viewpoint—they reasonably could have believed that their decision had a basis in fact and therefore was not arbitrary.[11]

Plaintiff has articulated no material factual dispute over the *reasonableness* of defendants' reliance on the expert and committee reports. She does not contend that these opinions were transparently without merit—that, for example, defendants should have known that the outside expert who found plagiarism was totally unqualified to evaluate Serbo–Croatian literature. Nor does she contend that defendants relied on anything other than these opinions and their own evaluations of her work. Her complaint is that defendants made the wrong choice in adopting the views of those who found plagiarism, and not that defendants reasonably should have known that those views were completely unworthy of reliance.

Plaintiff's protest about the constituency of the dean's committee—that the members

9. Plaintiff also suggests that defendants violated her substantive due process rights by failing to follow the procedures specified in the University's Academic Personnel Policy for "major personnel actions." Even if it was clearly established that violations of internal procedures may constitute deprivations of substantive due process, which we doubt, *see Perkins v. Board of Directors,* 686 F.2d 49, 51 n. 5 (1st Cir.1982), we have no doubt that defendants would be entitled to qualified immunity because of the uncertainty over whether the university procedures apply in the circumstances of this case.

10. Indeed, her arguments may even be irrelevant on the merits. To hold defendants liable,

it is insufficient for plaintiff to show that they made the "wrong" decision. She must show that the decision to censure her was entirely unsupported. *See* note 11 *infra.*

11. We note that this approach is consistent with the approach used for reviewing an academic decision in *Ewing,* 474 U.S. at 225, 106 S.Ct. at 513. The Court stated that judges "may not override [a genuinely academic decision] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."

were general faculty rather than a panel of experts—is insufficient to challenge the reasonableness of defendants' reliance on the committee. She must show not only that others were more qualified to evaluate her work, but that it was so inappropriate to rely on the non-experts that defendants could not reasonably have done so. She has not made such a showing.[12]

Because plaintiff has failed to raise a substantial factual dispute over whether defendants should have known that their decision to censure her was wholly without support,[13] they are entitled to qualified immunity on the substantive due process claim.[14]

## IV.

■ Plaintiff alleges three state tort claims against only defendant Burgin: defamation, interference with contractual relations and intentional infliction of emotional distress. In *Gildea v. Ellershaw*, 363 Mass. 800, 820, 298 N.E.2d 847, 858–59 (1973), the Massachusetts Supreme Judicial Court established an immunity for the good-faith discretionary acts of public officials performed within the scope of their official authority. *See also Duarte*, 405 Mass. at 49–50 & n. 5, 537 N.E.2d at 1234.[15] Thus, even if Burgin violated plaintiff's rights under state law—a matter as to which we take no view—she would be immune from suit so long as she was acting "in good faith, without malice and without corruption." *Gildea*, 363 Mass. at 820, 298 N.E.2d at 859.[16]

This good faith immunity is of no avail to defendant Burgin at this time, however. As the district court found, a genuine issue of material fact remains concerning her motives. Plaintiff asserts, and defendants acknowledge, that Burgin and the plaintiff had a history of animosity toward each other.[17] Burgin triggered the plagiarism investigation and, if it turns out that plaintiff's censure was unjustified, this evidence of bad feelings could support a factfinder's judgment that Burgin acted maliciously. We therefore affirm the district court's denial of immunity on the state tort

12. We emphasize that even if defendants' conclusion about the quality of plaintiff's research was against the weight of the evidence, as plaintiff alleges, the decision to censure her would not necessarily be arbitrary, and therefore a violation.

13. The nature of the substantive due process claim alleged against defendant Burgin, who did not participate in the decision to censure plaintiff, is unclear. Burgin's role was to trigger the investigation that led to the censure. Plaintiff's claim may be that Burgin's decision to alert the Russian Department personnel committee to the possibility of plagiarism was arbitrary and capricious. In light of the expert and committee reports, however, we cannot say that Burgin reasonably should have known that the similarities she perceived between plaintiff's work and Setschkareff's were so insignificant that the suspicion of plagiarism reported to the personnel committe was unfounded and arbitrary.

14. Plaintiff's failure to demonstrate a genuine issue of material fact sufficient to defeat defendants' motion for summary judgment based on qualified immunity protects defendants from liability for damages even if plaintiff ultimately proves at trial that they could not reasonably have relied on the expert and committee findings of plagiarism. Plaintiff had ample opportunity for discovery, and allowing a reconsideration of the immunity question at trial would

defeat the principle that that issue be *resolved* as early as possible. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982).

15. This immunity is intended to protect defendants from suit, and therefore is properly addressed in an interlocutory appeal. *See Duarte*, 405 Mass. at n. 2, 537 N.E.2d at n. 2.

16. Defendants' brief does not explicitly rely on *Gildea* as a basis for immunity, instead arguing that Burgin is entitled to summary judgment on the state tort claims based on a qualified "privilege," *see infra* at note 18. In their Motion for Summary Judgment, however, defendants stated not only that their actions were privileged but also that they acted in good faith and therefore are immune from liability for damages. Defendants in their brief also describe *Gildea* as recognizing official immunity for discretionary acts of public officials. In these circumstances, we do not consider the issue of common law immunity to have been waived.

17. In his deposition, Dean Freeland testified that this animosity had been "in the air for a long period of time as part of the folklore of the institution.... It's famous in our institution...." Appendix at 430.

claims.[18]

## V.

We summarize our holdings:

1. Well-established First Circuit precedent limits our review in this case to the issue of qualified immunity;

2. Because the defendants could not reasonably have known that their actions in conducting the plagiarism investigation and censuring plaintiff violated her clearly established right to procedural due process, they are entitled to qualified immunity on that claim;

3. Because plaintiff has shown no factual dispute over whether defendants reasonably should have known that the evidence on which they relied to censure her was without foundation, they are entitled to qualified immunity on plaintiff's substantive due process claim;

4. Defendant Burgin is not entitled to qualified immunity on plaintiff's three tort claims at this stage of the proceedings because a genuine issue of material fact remains concerning her motives.

*Reversed in part, affirmed in part. No costs.*

---

**18.** We decline to consider whether Burgin is entitled to summary judgment based on a qualified privilege under Massachusetts law. *See* note 16 *supra.* She asserts that a privilege defense is available on the state tort claims when an employee, in good faith, disseminates certain job-related information about a fellow worker. We do not believe it is appropriate to consider the question of privilege in this interlocutory appeal. We have been cited no case indicating that the Massachusetts courts view the qualified privilege as an immunity from *suit,* as distinguished from an immunity from *liability. See Restatement (Second) of Torts* § 592A, Conditional Privileges (1977) (describing privileges as protection against liability). The district court's rejection of Burgin's motion for summary judgment based on qualified privilege is therefore not a final judgment reviewable in an interlocutory appeal. *See Breault v. Chairman of the Bd. of Fire Comm'rs of Springfield,* 401 Mass. 26, 30–31, 513 N.E.2d 1277, 1280–81 (1987).