DECISION
This matter is before the Superior Court on the appeals of Helen Kagan and Thomas McGhee (collectively "appellants") from a decision of the Board of Regents for Elementary and Secondary Education (board) that reversed a decision of the Commissioner of Education (Commissioner). Jurisdiction in this court is pursuant to G.L. 1956 § 16-13-4.
Facts and Travel
The pertinent facts of this case have been gleaned from the findings of the Commissioner. During the 1992-93 school term, appellants were employed as nontenured teachers in the newly formed Bristol/Warren Regional School District. On February 18, 1993, they were among 36 nontenured teachers to receive notice from the newly appointed Superintendent, Guy DiBiasio (DiBiasio), that their employment contracts would be recommended for nonrenewal. In letters forwarded to each appellant, DiBiasio explained that he believed that there were "more qualified teachers" available for appellants' respective positions. On February 25, 1993, the Bristol/Warren Regional School Committee (school committee) accepted DiBiasio's recommendation and unanimously voted in favor of nonrenewal of the contracts of the 36 nontenured teachers.[1]
However, the tide seemingly turned at or about the beginning of the 1993-94 school term, as contract negotiations between the teachers' union and the school committee yielded an unwritten agreement by the latter to employ as many of the 36 teachers as there were available positions. Thirty-four of the nontenured teachers were recalled; appellants were the only two not re-employed for the upcoming school year. On September 28, 1993, appellants requested a hearing on the issue of the nonrenewal of their employment contracts. A hearing was held before the school committee on November 22, 1993, after which the school committee sustained its earlier decision to accept DiBiasio's recommendation of nonrenewal and confirmed the termination of both appellants.
On February 1, 1994, appellants transmitted a notice of appeal to the Commissioner. On June 27, 1994, a hearing officer appointed by the Commissioner conducted a de novo hearing at which DiBiasio testified. On August 23, 1994, the Commissioner approved a written decision issued by the hearing officer. The Commissioner concluded that although appellants could be terminated without a showing of just cause, the school committee was required to make a showing that DiBiasio's conclusions were not arbitrary or capricious. Further, the Commissioner determined that the school committee's decision to accept DiBiasio's recommendation of nonrenewal was "based exclusively on [DiBiasio's] good-faith professional belief and unaccompanied by any facts concerning the qualifications or performance of these individuals or the quality of the applicant pool." Additionally, the Commissioner noted that unlike a presumably valid nonrenewal notice premised upon a future plan to review a teacher's credentials, DiBiasio's decision "was not designed to ensure his future opportunity to assess the credentials of the appellants, or even consider their credentials in comparison with other, as yet unidentified, theoretically better-qualified teachers." As such, the Commissioner found the reasons given for appellants' nonrenewal to be "lacking in factual support or other justification."
Subsequently, appellants filed an appeal to the board. In a terse written decision that reversed the decision of the Commissioner, the board concluded that while the reason given for nonrenewal of appellants' contracts was of a "general nature," the reason was similar to "`the desire to find a more qualified teacher, as yet unidentified'" which was one of a number of reasons given for nonrenewal of a nontenured teacher's contract held valid by the Commissioner in a previous case. The board disagreed with the Commissioner's support of conditional nonrenewal premised on a plan to review appellants' credentials at a later time and noted that this would "creat[e] a requirement beyond that currently imposed by law." Finally, the board noted the necessity in preserving the distinction between tenured and nontenured teachers and concluded that the decision of the Commissioner weakened that distinction.
Having exhausted their administrative remedies, appellants filed an appeal to this court on November 1, 1995.[2] They argue, inter alia, that the decision of the board was "arbitrary or capricious" and urge this court to reverse that decision and uphold the conclusions of the Commissioner. The appellants direct the court's attention to the testimony of DiBiasio at the hearing before the Commissioner. In particular, appellants note that DiBiasio testified that he had not reviewed the personnel files or other documentation of appellants, nor did he conduct an assessment of their performance or credentials prior to making his decision. Essentially, appellants assert that the actions of DiBiasio and the school committee contradict the purposes of the Teachers' Tenure Act and the principles of substantive due process since "no * * * evaluation or judgment was undertaken [by DiBiasio] and the conclusion was devoid of any basis."
Alternatively, the school committee argues that at the time of the nonrenewal notices the new school committee and its newly hired superintendent were in a "unique position, faced with inadequate records and practical and statutory time constraints" and as part of the school committee's desire to seek better teachers it was necessary for DiBiasio to have discretion concerning the renewal of appellants' contracts. The school committee contends further that the Commissioner's proposal of a future review of appellants' credentials reaches beyond the current statutory requirements and would "blur the distinction" between tenured and nontenured teachers. Finally, the school committee defends the reasons given by DiBiasio as "factually accurate, truthful and based on the information then available" and, as such, the board's decision to reinstate the school committee's decision should be upheld.
For the reasons set forth below, this court affirms the decision of the board.
Standard of Review
The Rhode Island Supreme Court has determined that an appeal similar to the instant is specifically governed by § 16-13-4.See, Jacob v. Burke, 110 R.I. 661, 669, 296 A.2d 456, 461 (1972) (hereinafter Jacob I) ("[an] appeal from the decision of a local school board by a * * * nontenured teacher whose contract is not renewed, is governed by § 16-13-4 and not § 16-39-2 or 3."). This section, in pertinent part, provided:
 "Any teacher aggrieved by the decision of the school board shall have right of appeal to the state department of elementary and secondary education and shall have the right of further appeal to the superior court."
In Jacob v. Board of Regents for Education, 117 R.I. 164,365 A.2d 430 (1976) (hereinafter Jacob II), the Supreme Court, in construing § 16-13-4, delineated the proper appellate process that must be followed by a nontenured teacher who seeks review of the school committee's failure to renew his or her annual contract. The Court stated that the teacher "must first seek a hearing before the school committee and from there proceed to the State's Commissioner of Education, to the Board of Regents, and then to the Superior Court." Jacob II, 117 R.I. at 165, 365 A.2d at 431.
Interestingly, both appellants and the respondent school committee erroneously assert that this court's review of the board's decision is subject to the provisions of the Administrative Procedures Act, and specifically the standard-of-review provisions set forth in § 42-35-15 (g). However, it is well-settled that appeals filed pursuant to § 16-13-4 fall outside the realm of the Administrative Procedures Act and, as such, are not governed by the provisions of § 42-35-15 (g). E.g., Jacob II, 117 R.I. at n.2, 365 A.2d at n.2 ("all decisions of the Board of Regents are exempt from review under the provisions of the Administrative Procedures Act."); Latham v. State of Rhode Island Department of Education,116 R.I. 245, 249, 355 A.2d 400, 402 (1976) ("The trial justice therefore erred in holding that the [Administrative Procedures] Act applied to plaintiff's appeal, and that plaintiff's appeal was not filed within the time limits stated for appeal in § 42-35-15 (b).")[3] Consequently, this court concludes that the standard-of-review provisions set forth in § 42-35-15 (g) are inapplicable to the present case.
Jacob II reveals the proper standard of judicial review. In explaining the rationale behind affording a nontenured teacher a hearing on the issue of nonrenewal of his or her employment contract, the Court observed:
 "that the statement of reasons and hearing provisos promulgated by our Legislature can act as a brake on any committee's desire to indulge in an arbitrary abuse of the exercise of its discretionary power." (Emphasis added.)
Jacob II, 117 R.I. at 171, 365 A.2d at 434.
This language from Jacob II compels this court to conclude that its review of this appeal is confined to an examination of the certified record in order to determine whether the board's decision was arbitrary or an abuse of the board's discretion "[t]o decide and determine appeals from decisions of the commissioner." See, former § 16-60-4 (9)(h).
Appellants' Termination
Although appellants argue a host of errors allegedly committed by the board, they essentially contend that the school committee's actions in accepting DiBiasio's recommendation of nonrenewal (as well as the validation of that decision by the board) amounted to a violation of their substantive due process right to be free from arbitrary or capricious decisions affecting their employment status and contradict the purposes of the Teachers' Tenure Act.
(a) Substantive Due Process
It is well recognized that substantive due process protects an individual against arbitrary and capricious actions by the government or state. E.g. Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."); see also, Dent v. West Virginia,129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889); Newmanv. Commonwealth of Massachusetts, 884 F.2d 19, 24 (1st Cir. 1989), cert. denied, 493 U.S. 1078, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990); Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988); Brenna v. Southern Colorado State College,589 F.2d 475, 477 (10th Cir. 1978). The United States Supreme Court has yet to answer the query of whether the Fourteenth Amendment provides substantive due process protection against arbitrary and capricious academic decision making. See, Newman, 884 F.2d at 25 (citing cases). However, the First Circuit Court of Appeals, in a series of cases, has held that teachers challenging the nonrenewal of their contracts are entitled to such a safeguard.Id. (tenured university professor); McEnteggart v. Cataldo,451 F.2d 1109, 1111 (1st Cir. 1971), cert. denied,408 U.S. 943 (1972) (nontenured college teacher); Drown v. PortsmouthSchool District, 451 F.2d 1106, 1108 (1st Cir. 1971) (nontenured teacher); see also, McCann v. Ruiz, 788 F. Supp. 109, 119-20 (D. Puerto Rico 1992) (nontentured university professor).[4] InDrown, 451 F.2d at 1108, the First Circuit observed that:
 "a reason [for nonrenewal] may be arbitrary or capricious in any of three ways. * * * [A] reason may be unrelated to the education process * * * [it] may be arbitrary in that it is trivial * * * [or] it may be arbitrary or capricious in that it is wholly unsupported by a basis in uncontested fact either in the statement of reasons itself or in the teacher's file."
In Wujcik v. School Committee of the Town of Warren,120 R.I. 452, 453, 388 A.2d 17, 18 (1978) our Supreme Court adopted the Drown test for evaluating the constitutionality of a nonrenewal notice sent to a nontenured teacher. There, the plaintiffs employment contract was not renewed due to a "substantial decline in pupil population in previous years."Id. The Court determined that none of the reasons given for nonrenewal were contrary to the three factors set forth inDrown and, since he was afforded a hearing at which to challenge the nonrenewal decision, the plaintiff "was accorded all the protection that the law provides a nontenured teacher whose contract is not renewed." Id.
Applying this test to the instant case, the court finds that appellants were not deprived of their substantive due process rights. In the termination letters sent to appellants, DiBiasio stated that he sought to replace appellants with "more qualified teachers." At the hearing before the Commissioner, DiBiasio defended his decision by concluding that his role as superintendent was to "striv[e] for excellence in the system and hir[e] only the best-qualified, most-qualified individuals." The court finds that the reason given by DiBiasio, as well as his motivation for appellants' termination, are related to an important aspect of the education process — namely to provide students with the most qualified teachers available — and, as such, are not trivial.[5]
Moreover, the reason given by DiBiasio for nonrenewal of appellants' employment contracts is not "wholly unsupported by a basis in uncontested fact."[6] The Commissioner's decision makes reference to the fact that DiBiasio rested his decision on his "good-faith professional belief' and that he had "`on file'" many applications for appellants' positions. In addition, DiBiasio testified before the Commissioner that in the context of nontenured teachers, he believed that there were always more qualified teachers available to replace the current nontenured teacher. Notwithstanding, at the initial hearing before the school committee appellants bore the burden of producing persuasive evidence tending to show that DiBiasio's statement of reason was devoid of any factual basis. E.g., Jacob II,117 R.I. 164, 171, 365 A.2d at 434 ("the § 16-13-2 hearing sought by the teacher casts no burden of proof on the committee. The burden of persuasion remains on the teacher to convince the committee that it was mistaken when the committee reached the conclusion that it did."); Tracy v. Scituate School Committee,
Commissioner of Education, March 12, 1984 at 5-6 ("the School Committee has gone forward with evidence attempting to show that other, specifically named candidates, were better qualified. * * * [However] our ruling here is premised on the holding that the appellant has failed to offer any persuasive evidence that the School Committee could not obtain from somewhere a more qualified teacher.") In reviewing the Commissioner's decision, the board determined that appellants failed to produce any evidence tending to contradict DiBiasio's statement of reason. A review of the record confirms the board's conclusion that no evidence existed to rebut DiBiasio's assertion that "more qualified teachers" were available. Accordingly, the court finds that DiBiasio's statement of reason was not "wholly unsupported by a basis in uncontested fact."
Having determined that the statement of reason was related to an important aspect of the education process, that it was not trivial, and that it was not wholly unsupported by a basis in uncontested fact, the court concludes that there was no cognizable deprivation of appellants' substantive due process rights.
(b) Teachers' Tenure Act
The appellants also argue that the decision of the board contradicts the purpose of the Teachers' Tenure Act since it failed to comport with the legislative intent behind the statement of deficiencies and hearing provisos afforded a nontenured teacher. In Jacob II, the Court observed that:
 "a statement of deficiencies can enable the teacher to embark on a program of self-improvement, correct any false information or rumors, explain away any incorrect impressions, and possibly uncover any constitutionally impermissible reasons for nonretention."
Jacob II, 117 R.I. at 170-171, 365 A.2d at 434.
The appellants contend that the statement of reason provided to them by DiBiasio was "so devoid of any basis" that they were unable to take advantage of any of the remedial measures delineated in Jacob II to effectively challenge the reason given for their termination. However, appellants had the opportunity to present an effective challenge through several of the channels listed above. First, at the hearing before the school committee, appellants could have (and indeed were required to) produce evidence that "more qualified teachers" did not exist. By so doing, appellants could "correct any false information" that DiBiasio may have had about their qualifications. As previously stated by the court, appellants failed to produce such evidence. Second, by raising the issue of whether the statement of reason violated their substantive due process rights, appellants have argued that their termination was "constitutionally impermissible." Although they were unsuccessful at persuading the court that their substantive due process rights were violated, the statement of reason given to appellants was sufficient to afford them the right to challenge its constitutionality. Consequently, the statement of reason provided to each appellant comported fully with the requirements of the Teachers' Tenure Act.
Conclusion
For all of the foregoing reasons, the court discerns no error in the decision reached by the board. The board's conclusion is supported by the certified record and, as such, was not arbitrary or capricious or characterized by an abuse of discretion. Accordingly the appeal is denied, and the board's decision is affirmed.
Counsel shall prepare the appropriate order for entry of judgment.
[1] The contracts of all 67 nontenured teachers in the Bristol/Warren Regional School District were not renewed as a result of the February 25, 1993 vote by the school committee. The nonrenewal of 31 of these nontenured teachers was for reasons such as uncertainty of funding, the return of other teachers from leaves of absence, and displacement by more senior teachers. This court will not pass upon whether these are valid reasons for the nonrenewal of a nontenured teacher's employment contract.
[2] Although appellants filed their complaint against both the board and the school committee, the school committee alone filed a respondent brief.
[3] But see, Pawtucket School Committee v. PawtucketTeachers Alliance, 610 A.2d 1104, 1106 (R.I. 1992) ("Because §16-39-2 is not expressly exempted by G.L. 1956 (1988 Reenactment) § 42-35-18 (b), the procedural rules for administrative hearings set forth in §§ 42-35-9 through 42-35-13 of the Administrative Procedures Act apply to hearings conducted by the commissioner.").
[4] In Board of Regents of State Colleges v. Roth,408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court overruled Drown and McEnteggart to the extent that these cases provided untenured teachers procedural due process protection. This decision does not affect the applicability of Drown and McEnteggart to this case since Rhode Island has chosen to provide nontenured teachers with procedural due process protection under § 16-13-4, and the alleged constitutional violation here concerns matters of substantive due process, an issue left unresolved by the holding in Roth.
[5] Although DiBiasio testified that appellants' positions were either not filled or reorganized and filled by a substitute in the 1993-94 school year, the court's inquiry surrounds DiBiasio's reason and motivation at the time of the termination letters. On this point, the court is satisfied that DiBiasio intended to fill appellants' position with "more qualified teachers."
[6] Although the statement of reasons must be supported by a basis in uncontested fact, it does not need to satisfy the "good and just cause" standard. See, Jacob v. Board of Regents forEducation, 117 R.I. 164, 170, 365 A.2d 430, 433 (1976) ("there is no indication whatever in either § 16-13-2 or § 16-13-4 that the `good and just cause' standard enunciated in § 16-13-3 is thereby incorporated for nontenured teachers.")