**Dr. William R. McCANN, Plaintiff,**

v.

**Dr. Alejandro RUIZ, et al., Defendants.**

**Civ. No. 90–2164 (JP).**

United States District Court,
D. Puerto Rico.

Feb. 11, 1992.

Judith Berkan, Rio Piedras, P.R. and Federico Lora López, Hato Rey, P.R., for plaintiff.

Rubén Nigaglioni and James D. Noel, III, Ledesma, Palou & Miranda, Hato Rey, P.R., for defendants Ruiz, Smith, Joyce, Soto, Schellenkens, Larue.

Engadi Charneco Barreto, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants Del Valle and Angleró.

Pedro Santiago Torres, San Juan, P.R., for defendant PREPA.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it (i) a Request for Summary Judgment on plaintiff's Complaint filed by defendants Larue, Angleró, Del Valle and PREPA, (ii) a Request for Summary Judgment on plaintiff's Complaint filed by defendants Ruiz, Smith, Joyce, Soto and Schellenkens, (iii) a Request for Dismissal of Claim Regarding Denial of Tenure filed by defendants Ruiz, Smith, Larue, Joyce, Soto, and Schellekens, and (iv) a Request for Summary Judgment on plaintiff's Amended Pleadings filed by defendants Ruiz, Smith, Joyce, Soto, Schellekens, and Larue. For the reasons set forth below, defendants' motions for summary judgment on plaintiff's procedural due process cause of action is hereby GRANTED while defendants' motions for summary judgment on plaintiff's first amendment and substantive due process causes of action are hereby DENIED. Defendants' motion to join necessary and indispensable parties is likewise DENIED.

### I. Background

Plaintiff, Dr. William McCann, brings this action seeking injunctive relief and monetary damages for the alleged violations of his constitutional rights. His action was filed pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343. Plaintiff also invokes the pendent jurisdiction of the Court to entertain certain claims arising under the laws of Puerto Rico.

Plaintiff was an Associate Professor in the Geology Department at the Mayagüez Campus of the University of Puerto Rico (hereinafter "RUM") for four years. During most of this time, he also occupied the position of Director of the Seismic Network of the Commonwealth of Puerto Rico. As Director of the Seismic Network, plaintiff was responsible for the maintenance of all of the network's stations, for the monitoring of earthquakes, and allegedly for the education of the public about earthquake hazards.

The Seismic Network is a series of seismic stations and recording instruments. It was owned by defendant Puerto Rico Electrical Power Authority ("PREPA") until 1988, at which time the University of Puerto Rico ("UPR") and PREPA entered into a contract for the transfer of the network's property to UPR. The network was operated by the United States Geological Sur-

vey until 1982, at which time operational responsibilities were assumed by UPR's Center for Environmental and Energy Research ("CEER"). In 1987, the operational responsibilities for the network were once again transferred—from CEER to RUM. At the time that PREPA transferred the operational responsibilities for the network to CEER, PREPA was in the process of preparing a seismic "risk map" for Puerto Rico containing information that would assist it in the design and location of power generation stations, dams, ports, and other structures under its direction. As part of the transfer, CEER agreed to continue the project and provide PREPA with a completed risk map, as well as any other information gathered from the operation of the network. When CEER transferred the operational responsibilities to RUM, RUM accepted the same conditions. In addition, PREPA provided RUM with certain proprietary data pertaining to seismic reflection lines. Defendants assert that this transfer was completed by means of a verbal contract which contained a confidentiality provision because of the considerable value of the seismic reflection lines in petroleum research.

When McCann arrived at RUM in August 1986, he assumed his duties as Assistant Professor under a temporary contract. This contract expired in June 1987, at which time McCann was granted a probationary appointment and placed on a tenure track. This appointment was renewed yearly until 1990. When he arrived at RUM he was also appointed Director of the Seismic Network, for which he received additional compensation. This appointment expired in May of 1990 and was not renewed.

On October 21, 1989, McCann participated in a radio show interview during which he opined that the proposed location for a coal-induced power plant was located unnecessarily close to a seismically active fault in the Mayagüez area of Puerto Rico and therefore posed a public hazard. His comments were reported in a general circulation newspaper the next day. Plaintiff asserts that following the broadcast defendants José Del Valle (Executive Director of

PREPA) and Orlando Angleró (Director of Planning and Environmental Planning at PREPA), acting on behalf of PREPA, contacted defendant Dr. David Larue (RUM Geology Professor), whom plaintiff alleges was "PREPA's man" at RUM. Plaintiff asserts that from this conversation, other conversations, and meetings involving Del Valle, Angleró, Larue and defendants Dr. Alan Smith (Director of RUM Geology Department), Dr. James Joyce (RUM Geology Professor), Alejandro Soto (RUM Geology Professor), and Johannes Schellekens (RUM Geology Professor), a decision was made to take retaliatory action against the plaintiff in response to his statement.

The alleged retaliatory acts included (i) the issuance of a temporary gag order requiring McCann to clear all comments with defendant Smith, (ii) the prohibition of use by McCann of information generated by PREPA, (iii) the distribution, to the press and to the public, of letters denouncing the statement made by McCann, (iv) requests made by Smith, Larue, Joyce, Soto, and Schellekens that McCann be dismissed from his professorship, (v) the dismissal of McCann from his directorship of the Seismic Network, (vi) the denial of McCann's access to resources of the network, (vii) interference with McCann's relations with students, professionals, and others, (viii) the institution of a "sham" evaluation of McCann carried out by Smith, Joyce, Soto, and Schellekens as members of the Geology Department Personnel Committee, and (ix) the publication in a trade magazine of an advertisement seeking a replacement for McCann's position. Plaintiff asserts that these acts occurred with the knowledge and approval of defendant Alejandro Ruiz, the Chancellor of RUM who, despite being informed of the retaliatory acts and his power to stop them, took no action.

The PREPA-related defendants assert that they had no hand in the alleged retaliation. They concede that they contacted RUM officials immediately after the radio broadcast, but insist that their only purpose in doing so was to inform these officials of their concerns that McCann might have been violating the verbal confidentiali-

ty agreement and that he appeared to be providing crucial information to the general public before providing it to PREPA, in violation of the agreement through which RUM took control of the network. They assert that they never called for or encouraged any retaliatory action or the dismissal of McCann from his directorship or his professorship.

Plaintiff alleges that as a result of defendants' continuing infringement of his constitutional rights, he has suffered physical pain and mental anguish, damage to his professional reputation, pecuniary losses in failing to obtain contracts, loss of compensation for his duties as professor and Director of the Seismic Network, uncertainty about future employment, and interference with his ongoing research.

## II. Standard of Review

 Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Accord Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no doubt exists as to whether a genuine issue of material fact is present. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir.1948). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack, supra*, at 181. For issues on which the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15; *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). The movant's burden is particularly rigorous, however, when the disputed issues involve questions of motive or intent, since in these cases "'jury judgments about credibility are typically thought to be of special importance.'" *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988) (quoting *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928 (1st Cir.1983)).

## III. Discussion

 42 U.S.C. § 1983 provides for the recovery of damages and injunctive relief against individuals and governmental bodies who deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.[1] In order to establish a prima facie cause of action under Section 1983 based on a constitutional violation, the plaintiff must prove that the defendant's conduct was a cause in fact of plaintiff's constitutional deprivation.

### A. "Under Color of Law" Requirement

 Section 1983 requires that the challenged conduct be carried out "under color of law." For all practical purposes, "color of law" and "state action" are the same where, as here, Fourteenth Amendment violations are charged. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case,

---

**1.** 42 U.S.C. § 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to any deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

only one defendant, Larue, suggests that his conduct cannot be construed as having been carried out under color of state law. He suggests that his conduct in this case involved only the expression of his opinion regarding McCann's conclusions about the dangers of the Mayagüez fault. He contends that this conduct was not carried out as part of his state-created authority but instead merely independent and individual conduct.

Cases in which a state official asserts that allegedly actionable conduct was carried out "off-duty" can be difficult to resolve. Courts have stated that the consideration of such an assertion requires a particularized study of "the nature of the act performed." *Stengel v. Belcher, 522 F.2d 438 (6th Cir.1975), cert. granted, 425 U.S. 910, 96 S.Ct. 1505, 47 L.Ed.2d 760, cert. dismissed as improvidently granted, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976); see also Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).* In this case, however, plaintiff has alleged actionable conduct on the part of defendant Larue far greater than that Larue himself is willing to recognize and which was carried out in connection with his duties at RUM—including the alleged fabrication, in concert with defendant Angleró, of the confidentiality agreement between PREPA and RUM. As a result, plaintiff has set forth more than sufficient information to suggest that defendant Larue might have been acting under color of law and Larue's request for summary judgment on this ground is therefore hereby DENIED.[2]

**B. Substantive Violations**

To establish a cause of action under Section 1983, plaintiff must establish that defendants owed him a constitutional duty and that the duty was breached. An analysis of this issue requires a consideration of the standards of care imposed upon public officials under the constitutional provisions which plaintiff alleges were violated.

**1. First Amendment**

The elements a plaintiff must show in a case in which a public employee claims that he was retaliated against for engaging in protected First Amendment activities is set forth in a series of Supreme Court decisions. *See Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 reh'g denied, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987); Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Mount Healthy School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).* These decisions establish that a public employer may not discharge an employee in a manner that infringes upon his constitutionally protected interest in freedom of speech and that an employee who is discharged under such circumstances may be entitled to reinstatement. *Accord Rankin v. McPherson, 483 U.S. at 383–84, 107 S.Ct. at 2896–97 (citing Perry v. Sindermann, 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972); Mount Healthy, 429 U.S. at 284–85, 97 S.Ct. at 574–75).*[3]

**2.** Defendants Ruiz and Smith initially argued that to the extent they are sued in their official capacities they are not "persons" subject to claims for retrospective injunctive relief or damages under Section 1983. *See Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Ngiraingas v. Sánchez, 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990).* In his response to defendants' motions, plaintiff clarified that he is suing Ruiz and Smith in their official capacities only for the implementation of remedies—to cover both these officials and their successors. Defendants have accepted that this course of action is appropriate and have asked only that

plaintiff's claims be clarified. The foregoing shall constitute the requested clarification.

**3.** Defendants point out that courts have been reluctant to intervene with academic judgments. *See Regents of the University of Michigan v. Ewing, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).* They also suggest that the First Circuit has been particularly reluctant to intervene with academic discretion in the award of tenure. *See, e.g., Kumar v. Board of Trustees, University of Massachusetts, 774 F.2d 1 (1st Cir. 1985), cert. denied, 475 U.S. 1097, 106 S.Ct. 1496, 89 L.Ed.2d 896 (1986); Banerjee v. Board of Trustees of Smith College, 648 F.2d 61 (1st Cir.), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70*

The determination of whether a public employer has properly discharged an employee for engaging in speech requires an analysis of four factors. First, the court must make a determination on the threshold issue of whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146, 147–48, 103 S.Ct. 1684, 1689, 1690–91, 75 L.Ed.2d 708 (1983) (footnote omitted) (determination should be made based on a consideration of "the content, form, and context of a given statement, as revealed by the record as a whole.").[4] Defendants apparently do not contend that plaintiff's statements did not address an issue of public concern. The statements were made during the course of a public radio broadcast. More importantly, the statements not only concerned matters of public concern but, at least arguably, were made to protect the public interest.

Second, the court must balance "the interests of the [plaintiff], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting efficiency of the public services it performs through the employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *see also Connick v. Myers*, 461 U.S. at 140, 103 S.Ct. at 1686. This balance has been deemed necessary "in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment." *Rankin v. McPherson*, 483 U.S. at 384, 107 S.Ct. at 2897. Considera-

tions which may support a state's action may include the extent to which the plaintiff's conduct impairs discipline by superiors or harmony among co-workers, the extent to which the conduct has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, and the extent to which the conduct impedes the performance of the speaker's duties or interferes with the regular operation of the defendant's enterprise. *Pickering*, 391 U.S. at 570–73, 88 S.Ct. at 1735–37. On this issue, which is at the heart of the controversy in this case, defendants vehemently assert that plaintiff's interest in making public statements regarding the risks associated with the Mayagüez fault was "not superior to that of the University and the government of Puerto Rico in providing the public with reliable and carefully studied information regarding earthquake hazards." Defendants contend that plaintiff's actions undermined the credibility of the Geology Department, injured the morale of its professors, and hindered the public interest in its smooth operation. Plaintiff contends that he had both a professional and a moral duty to inform the public of the hazards that he perceived. This issue will be central to the resolution of this case and is sure to be hotly contested at trial. As such, it is not ripe for action in a summary judgment context.

Third, plaintiff must show that his injuries were caused by defendants' alleged constitutional violations. *Accord Mount Healthy*, 429 U.S. at 286, 97 S.Ct. at 575. Plaintiff has the initial burden of showing that his conduct was "substantial" or "mo-

L.Ed.2d 639 (1981). The Court notes first the distressing fact that several of the cases cited by defendants on this point do not in fact deal with tenure decisions. In addition, plaintiff has cited to a case in this circuit which, in a related, Title VII context, stated that although courts should be " 'extremely wary of intruding into the world of university tenure decisions,' ... once a university has been found to have impermissibly discriminated in making a tenure decision, ... the university's prerogative to make tenure decisions must be subordinated to the goals embodied in Title VII." *Brown v. Boston University*, 891 F.2d 337, 359 (1st Cir.1989), *reh'g denied*, 1989 WL 143545, 1990 U.S.App. LEXIS 839 (1st Cir.1990) (quoting *Kumar*, 774 F.2d at 12 (Campbell, C.J., concurring)). It appears there-

fore that the Court does have the power to order a decision denying tenure overturned if such a remedy is deemed appropriate.

4. *See Hall v. Ford*, 856 F.2d 255, 258 (D.C.Cir. 1988) ("The first two inquiries [in the *Pickering* analysis] are questions of law for the court to resolve. *See, e.g., Connick*, 461 U.S. at 148 n. 7 & 1692 n. 10 [103 S.Ct. at 1691 n. 7 & 1692 n. 10]; *Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir.), *cert. denied*, [484] U.S. [830], 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). The latter two are questions of fact ordinarily left to the jury. *See, e.g., Jett v. Dallas Indp. School Dist.*, 798 F.2d 748, 758 (5th Cir.1986).")

tivating" factor in the defendants' decision to discharge him. *Id.* at 287, 97 S.Ct. at 576. If plaintiff makes this showing, the burden then shifts to the defendant to show that "it would have reached the same decision ... even in the absence of the protected conduct." *Id.* The First Circuit, in *McDonough v. Trustees of the University System of New Hampshire,* 704 F.2d 780 (1st Cir.1983), addressed the appropriateness of a trial court's preliminary dismissal of cases using this prong of the *Pickering* analysis. The Court explained that given that the analysis is "intensely fact-oriented" summary dismissal by a trial court is difficult for a defendant to obtain. *Id.* at 784 (citations omitted). Again, defendants, particularly the PREPA-related defendants,[5] vehemently assert that plaintiff cannot make the required causation showing in this case. They contend that, among other things, since the decision on whether or not to grant McCann tenure was made independently by the UPR Administrative Board, which did not base its decision on his speech-related conduct, the causal link between his statements and the denial of his request for tenure was broken. Plaintiff has not yet set forth in particularly great detail the causal link between his public comments, the actions of each of the defendants, and each of his injuries; however, such a showing is not required of the plaintiff at this juncture of the litigation. As has already been noted, the First Circuit has explained in a related context that

> the test [for granting summary judgment] remains particularly rigorous when the disputed issue turns on a ques-

tion of motive or intent. "Under such circumstances, jury judgments about credibility are typically thought to be of special importance." In a discriminatory discharge case, particularly, a plaintiff "will rarely, if ever be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's [animus]. Rather, a plaintiff must try to convince the fact-finder to draw an inference from a broad array of circumstantial and often conflicting evidence...."

*Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988) (citations omitted) (editing in original) (summary judgment appropriate if plaintiff relies on unsupported allegations but not if he can point to specific facts in supporting documents giving rise to an inference of unlawful conduct). Since the plaintiff in this case has set forth at least a plausible scenario whereby his protected speech conduct might have led to the injuries he has suffered, defendants' requests for summary judgment on plaintiff's speech-related claims are hereby DENIED.

### 2. Procedural Due Process

Procedural due process protections originating in the Fourteenth Amendment guaranty public officials who enjoy a "property" or "liberty" interest associated with their continued employment the right to at least an informal hearing before they are discharged. *Accord Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173 (1st Cir.1988) (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494

---

5. The PREPA-related defendants assert that since they were not McCann's "employers" the injuries McCann alleges—dismissal from his positions at RUM—cannot have come as a result of any actions on their parts. Plaintiff has at least two legitimate rejoinders to this assertion. First, he has alleged injuries—such as his being denied information generated by PREPA which was important to his research—that may have in fact resulted from actions by PREPA personnel. Second, and more important, he has suggested that PREPA personnel might have been a driving force in the dismissal of McCann from his positions. Plaintiff's essential contention in this action appears to be an unholy alliance was struck between the PREPA and RUM defen-

dants, who, acting in concert, conspired to retaliate against McCann for his "whistle-blowing" activities. *See* Plaintiff's Opposition to Requests for Summary Judgment ("It would certainly not be unreasonable to infer that the result of the extensive communication between Angleró and Larue, and the meeting of PREPA officials and the RUM hierarchy was an agreement to have McCann fired, both as director of the Seismic Network and as professor at the University of Puerto Rico Mayagüez Campus.") As the Court notes, plaintiff may have a difficult time proving all the facts necessary to support this claim; however, he has set out facts sufficient to afford him the opportunity to attempt to do so at trial.

(1985)). Plaintiff seeks to set out claims for violations of his procedural due process rights resulting from the University's denial of his request for tenure, its failure to renew his contract as a professor, and his dismissal as Director of the Seismic Network. To do so, he must set out facts sufficient to show that he had either a property or liberty interest associated with both of the positions and that he was not afforded adequate pre-termination procedures.

### a. property interest

A state employee's job is "property" only if state law *gives* the employee such a "property" right in his continued employment. *Accord Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491. Under the law of Puerto Rico, only government employees holding "career" or "tenured" positions possess such property rights in their continued employment. *Kauffman,* 841 F.2d at 1173; *see also Beitzell v. Jeffrey,* 643 F.2d 870, 877 (1st Cir.1981) (citations omitted) ("In the absence of unusual circumstances, where a formal tenure system exists, that system confers no 'property' interest on probationary employees.")

In regard to his position as professor, plaintiff obviously does not contend that he reached official tenured status. He does contend, however, that he benefitted from a "de facto tenure system" which allegedly operated at RUM. The First Circuit considered in detail the possibility of acquiring de facto tenure in *Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419 (1st Cir.1986), in which it explained:

> Where a college or university has a written, formalized tenure procedure, courts have generally rejected claims that a plaintiff has somehow acquired de facto tenure or a legitimate expectation of continued employment outside of and apart from the codified process. This is because one of the very purposes of formalized hiring procedures is to avoid the type of de facto tenure recognized in

*Perry v. Sindermann,* 408 U.S. 593, 601–603, 92 S.C. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). Consequently, *when there is a written system of which the employee is aware, it generally will not be reasonable for the employee to rely on employment assurances made outside of the formalized system.*

*Lovelace,* 793 F.2d at 423 (citations omitted) (emphasis added). Since the University of Puerto Rico does in fact have written, formalized tenure procedures (which are set forth in Article 50 of the General Regulations of the University of Puerto Rico), plaintiff does not contend that he was unaware of these written procedures, and plaintiff has failed to set forth "truly extraordinary circumstances where de facto rights can be acquired" *id.* at 423 (discussing *Soni v. Board of Trustees,* 513 F.2d 347 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976)),[6] *Lovelace* compels a finding that plaintiff did not acquire de facto property rights to his professorship in this case.

In regard to his position as Director of the Seismic Network, plaintiff is again forced to present a somewhat creative argument as to how he acquired property interests in the position. He cannot claim that he obtained any state-created property right in the position because, pursuant to Section 50.5.4.1 of the UPR Regulations, members of the UPR faculty to whom administrative functions have been assigned "shall not be granted tenure in the performance of such functions." Plaintiff asserts, however, that he obtained property rights in the position because of guarantees he received that as long as he held his professorship he would also hold his directorship. This argument can be disposed of easily. Since the Court has already held that plaintiff had no property interest in his position as professor, the alleged connection between the professorship and the directorship can create no property rights in the latter.

---

**6.** *See also Beitzell v. Jeffrey,* 643 F.2d at 877 ("It would take highly unusual circumstances to show that plaintiff had been granted *de facto* tenure.")

### b. liberty interest

Under certain circumstances, the list of fundamental "liberties" that are accorded procedural protection under the Fourteenth Amendment "includes an interest in reputation—at least where the injury to reputation is likely to be sufficiently severe to interfere with the exercise of other fundamental freedoms such as ... the right 'to engage in any of the common occupations of life.'" *Beitzell v. Jeffrey*, 643 F.2d at 877 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972),

> the [Supreme] Court, after referring to *Meyer*, suggested that the Fourteenth Amendment offers protection against a severely defamatory charge, such as a claim of "dishonesty or immorality" that might "seriously damage" one's "standing and associations in his community" or impose a "stigma" that significantly interfered with his ability to "take advantage of other employment opportunities."

*Beitzell v. Jeffrey*, 643 F.2d at 877. Therefore, where an employer, in connection with the termination of an employee, makes statements which may damage the employee's standing or reputation,[7] the employee may have a right to a "name-clearing hearing." *Owen v. City of Independence*, 560 F.2d 925 (8th Cir.1977), *vacated on other grounds*, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978).

Defendants concede that plaintiff may have a claim based on "stigma" or damage to reputation, but assert that sufficient procedures were followed to allow plaintiff opportunities to respond to any allegations. Plaintiff was provided copies of each evaluation of his work that was prepared and was allowed to answer to any charges therein. He was invited to a meeting at which the charges against him were to be discussed. He was given an opportunity to speak with Stuart Ramos, a member of the UPR Administrative Board, and to provide Mr. Ramos with documents defending plaintiff's position. Mr. Ramos submitted these documents to the Board when it considered plaintiff's tenure request and advocated the granting of tenure to the plaintiff. The Court believes that these procedures were sufficient to provide plaintiff with an adequate opportunity to "respond, explain, and defend" (*Gorman v. University of Rhode Island*, 837 F.2d 7, 13 (1st Cir.1988)) his reputation against the charges levied against him.

Therefore, given the fact that plaintiff had no property interest in any of the positions that he lost and that sufficient procedures were followed to provide plaintiff with an opportunity to clear his name of charges that may have damaged his reputation, plaintiff has not set forth sufficient facts to state a cause of action under the procedural due process clause and defendants' motions for summary judgment on this cause of action are hereby GRANTED.

### 3. Substantive Due Process

The due process clause does not cast an entirely cold eye on plaintiff's claims, however. Plaintiff's essential contention in this case is not that insufficient procedures were provided to him but that the procedures that were provided were tainted. Plaintiff's claims, which are more qualitative than quantitative, can be analogized to charges by employees that they have been the victim of arbitrary or capricious decisions affecting their employment status. His claims are therefore more appropriately viewed as presenting issues of substantive due process.

The First Circuit has held that "school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation." *Newman v. Commonwealth of Massachusetts*, 884 F.2d 19, 25 (1st Cir.

---

7. *See Beitzell v. Jeffrey*, 643 F.2d at 878 (footnote and citations omitted) ("... [T]he Fourteenth Amendment procedurally protects reputation only where (1) government actions threatens it, (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected.")

1989), *cert. denied, Newman v. Burgin*, 493 U.S. 1078, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990) (footnote omitted) (noting that courts are split on the issue, which the Supreme Court has side-stepped on several occasions). Therefore, if the plaintiff can prove that the evaluation procedure that was followed by the Personnel Committee was in fact a "sham," so that the reasons for dismissing him from his positions were "unrelated to the educational process ... or ... wholly unsupported by a basis in fact" (*McEnteggart v. Cataldo*, 451 F.2d 1109, 1111 (1st Cir.1971), *cert. denied*, 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972)), he may be entitled to substantive due process recovery based on the decision to deny him tenure.[8] On this claim defendants reiterate their causation argument—that because of the review procedures followed by the University the evaluation and recommendation of the Personnel Committee could not have caused plaintiff to have been denied tenure. The Court has already found that triable issues exist on this issue. In addition, since it is defendants' contention that the decision not to renew plaintiff's contract was a direct result of the decision to deny him tenure, plaintiff may also be entitled to recovery on the decision not to renew his contract.[9] Defendants' requests for summary judgment on plaintiff's substantive due process claims are therefore DENIED.

## C. Qualified Immunity

The RUM-related defendants contend that, to the extent they are being sued in their individual capacities, they are entitled to the protections of a qualified immunity. Since the Court has found that plaintiff's procedural due process claim fails on the merits, defendants' qualified immunity defense as to this claim is moot. The Court must still consider, however, whether or not defendants can avail themselves of the qualified immunity defense against plaintiff's claims predicated on the first amendment and the substantive due process clause.

■ The doctrine of qualified immunity insulates government actors in the exercise of discretionary powers from civil liability insofar as their conduct does not abridge clearly established federal rights about which a reasonably prudent official should have been aware. *Accord Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has explained:

> The qualified immunity inquiry logically begins with identification of the right at issue and proceeds to place that right in historical perspective. If the right allegedly violated was "clearly established" when the challenged conduct took place, then the defendants should reasonably have been cognizant of it. In this context, the phrase "clearly established" has a special condition: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Amsden v. Moran*, 904 F.2d 748 (1st Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct.

---

**8.** The Court notes that several hurdles must be cleared by plaintiff to recover under the substantive due process clause in this case. First, *Newman*, which discusses the rights of a "tenured teacher" might appear to contain a threshold requirement that plaintiff show a property interest in his job—a requirement that the Court has already found plaintiff cannot meet. On the other hand, if plaintiff succeeds in showing that he had a protected "liberty" interest associated with his position, there appears to be no reason why the protections set forth in *Newman* should not carry over to his situation. Second, the *Newman* court recognized that "the courts are not yet unanimous on whether this substantive right exists." 884 F.2d at 25. Plaintiff will have to show that the right continues to be recognized in this circuit. Third, the *Newman* court was faced with claims that a decision was "arbitrary and capricious." Plaintiff will have to establish that the protection should apply in situations where the decision is the result of intentional retaliation. Since neither of the parties has explored the contours of these issues to this point, the Court expects that it will receive from them considerably more argumentation on the applicability of the substantive due process protections to this case.

**9.** It is as yet unclear whether the decision to terminate plaintiff's position as Director of the Seismic Network might also be subject to substantive due process scrutiny.

713, 112 L.Ed.2d 702 (1991) (citations omitted).

 As the discussion in Section II.B. of this Opinion illustrates, it was clearly established at the time the defendants acted that a public employee had right not to have his employer violate either his first amendment or substantive due process rights in the fashion plaintiff alleges. In addition, plaintiff has set forth sufficient facts to suggest that a reasonable official in defendants' shoes should have known that his acts or omissions violated the established constitutional rights. *Accord Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Feliciano–Angulo v. Rivera Cruz*, 858 F.2d 40, 45 (1st Cir.1988) (discussing purely objective nature of inquiry). If defendants did in fact agree to retaliate against plaintiff because of the exercise of his right to free speech and did in fact design an unfair and tainted review procedure with the intention of arranging the dismissal of plaintiff from his positions at RUM, it is beyond peradventure of doubt that they should have known that these actions were in violation of plaintiff's clearly established constitutional rights. Defendants' motions for summary judgment based on the qualified immunity defense are therefore hereby DENIED.

### D. Necessary and Indispensable Parties

 Defendants contend that since the ultimate authority on whether or not to grant plaintiff tenure lay with the Administrative Board, which relied on a recommendation of the Dean of Arts and Sciences in reaching its decision, plaintiff should have joined as parties to this action both the Board and the Dean of Arts and Sciences. Defendants assert that in the absence of these parties plaintiff will be unable to show the causal link between his statements and the decision to deny him tenure and the Court will be unable to implement the remedies plaintiff seeks. Defendants have moved for the joinder of these allegedly necessary and indispensable parties under Rule 19 of the Federal Rules of Civil Procedure.

 Rule 19 provides, in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties. . . .

Fed.R.Civ.P. 19(a). This subsection of Rule 19 is designed to protect the interests of existing parties in securing complete relief and the interest of the public in avoiding repeated lawsuits. *Accord Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.*, 417 F.2d 1113 (7th Cir.1969). Since a court is however empowered with wide discretion to shape a decree and adjudicate the rights of parties before it without affecting the rights of absent persons, such as by granting a monetary judgment instead of an injunction that might affect the rights of third parties, those third parties must be joined only where a flexible decree is impossible so that any relief the court will be able to grant can only be characterized as "hollow" or a "paper decree." *Accord Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir.1970).

In addition, underlying Rule 19 is a concern for possible prejudice to existing parties where a suit goes forward without third parties deemed indispensable to the just resolution of the dispute. It has therefore been stated that the burden on the moving party under Rule 19 is to show "the nature of the unprotected interests of the absent parties" (5A C. Wright & A. Miller, *Federal Practice and Procedure*, Civil § 1359) (citing *Ilan–Gat Engineers, Ltd. v. Antigua International Bank*, 659 F.2d 234 (D.C.Cir.1981)) or that the absence of the parties named in the motion may operate to injure a defendant (*accord Meyerding v. Villaume*, 20 F.R.D. 151 (D.Minn.1957)). In this case, defendants are in the unusual position of advocating the joinder of parties based on the interest of the *plaintiff* in setting forth a complete chain of causation and in obtaining a reme-

dy which may be implemented. Plaintiff has objected to the motion on the ground that the parties named in the motion are not necessary to the presentation of his case. As a result, the only asserted prejudice is to the interests of plaintiff, who is wholly unconcerned by the situation. In addition, the Court feels that the interests of the absent parties are so closely aligned with those of the defendants that these interests will be adequately protected even though the case will go forward without these parties. Defendants' request for the joinder of the Administrative Board and the Dean of Arts and Science is therefore hereby DENIED.

IT IS SO ORDERED.